UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AFFILIATES, Inc.; HUMAN SERVICE CONNECTION, Inc.; H.A.S., Inc., ALTERNATIVE NURSING SERVICES, Inc.; A WAY THROUGH COUNSELING CENTER, Inc.; CENTRAL IDAHO AFFILIATES, Inc.; DUNSTAN HALL & ASSOCIATES, Inc.; PROVIDER AFFILIATE AGENCY, Inc.; ROBINSON & AFFILIATES, Inc.; SCOTT COMMUNITY CARE, PLLC; TOMORROW'S HOPE SATELLITE SERVICES, Inc.; WILLIAMS & URALDE, Inc.,<br><br>    Plaintiffs,<br> v.<br><br>RICHARD ARMSTRONG and LESLIE CLEMENT, in their official capacities,<br><br>    Defendants.<br><br>---<br><br>RUSSELL KNAPP and SANDRA KNAPP, as legal guardians of Jason Knapp; and JANA SCHULTZ, as legal guardian of Toby Schultz,<br><br>    Plaintiffs,<br> v.<br><br>RICHARD ARMSTRONG and LESLIE CLEMENT, in their official capacities,<br><br>    Defendants. | Case Nos. 1:09-cv-00149-BLW<br>    1:11-cv-00307-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Motions for Preliminary Injunction (Dkt. 61) in Affiliates, et al. v. Armstrong, et al. (Case No. 1:09-cv-00149-BLW), and (Dkt. 2) in Knapp, et al. v. Armstrong, et al. (Case No. 1:11-cv-00307-BLW). The Court heard oral argument on July 26, 2011, following an expedited briefing schedule. Having considered the parties' written and oral arguments, and being familiar with the record, the Court will grant the Motions for Preliminary Injunction, as more fully expressed below.

## BACKGROUND

**1.     Legal Background**

"Medicaid . . . is a cooperative federal-state program that directs federal funding to states to assist them in providing medical assistance to low-income individuals." *Cal. Pharmacists Ass'n v. Maxwell*-Jolly, 596 F.3d 1098, 1102 (9th Cir. 2010) (citation omitted). States that choose to participate in Medicaid must comply with the requirements under the Medicaid Act, including development of, and adherence to, a state plan for medical assistance, which must receive approval from the federal Secretary of Health and Human Services, through CMS. *Id.*; 42 U.S.C. § 1396 et seq.; 42 C.F.R. § 430.15(b); *see* § 1396a(a)(1)-(73).

Under the Medicaid Act, requirements of § 1396a(a), in paragraphs (1), (10), and (23), may be waived such that a state is not deemed out of compliance with the Act. 42 U.S.C. § 1396n. Paragraph (23), known as the "free choice" provision, provides that

state plans must permit Medicaid participants to receive services "from any institution, agency, community pharmacy, or person, qualified to perform the service or services required who undertakes to perform such services." 42 U.S.C. § 1396a(a)(23). The IDHW has requested and received two waivers: the Aged and Disabled Home and Community Based Services Waiver (A&D Waiver), and the Developmental Disabilities Home and Community Based Services Waiver (DD Waiver). *Complaint*, Dkt. 1, ¶ 8. These waivers allow certain types of care to be provided in home and community based, rather than institutional, settings. *Id.*

Under Idaho's DD waiver, residential habilitation services assist eligible participants to reside in their own homes or in the community with additional support services, such as in a Certified Family Home. *Sanchez v. Johnson*, 416 F.3d 1051, 1054 (9th Cir. 2005). The IDHW requires residential habilitation to be provided under the supervision of a properly licensed Residential Habilitation Agency. IDAPA 16.03.10.705. Where a Medicaid participant chooses a Certified Family Home, then that Certified Family Home provider must affiliate with a Residential Habilitation Agency. IDAPA 16.03.10.705.01.

2.      **Affiliates, et al. v. Armstrong, et al., Case No. 1:09-cv-00149**

Plaintiffs in Affiliates v. Armstrong are providers of Residential Habilitation Affiliation services who contract with the State of Idaho and its Medicaid program.

*Complaint*, (Case No. 1:09-cv-00149)[1] Dkt. 1-4, ¶ 1. Plaintiffs work with Certified Family Home providers in the state of Idaho to provide developmentally disabled individuals the Medicaid-covered service referred to in Idaho regulations as "affiliation." *Id.* "Affiliation" includes provision of "oversight, training, and quality assurance to the certified home provider." IDAPA 16.03.10.705.01; *Grooms Dec.*, ¶ 7, Dkt. 65-1. Affiliation also includes development and execution of Provider Implementation Plans, which describe the services provided by the Certified Family Home provider to meet the Medicaid participant's needs. *Scott Dec.*, (Case No. 1:11-cv-00307) Dkt. 2-2, ¶ 11. Affiliation has "historically been provided by Residential Habilitation Agencies." *IDHW Resp.*, Dkt. 65 at 2. If a Medicaid participant chooses a Certified Family Home provider, then that provider must affiliate with a Residential Habilitation Agency. IDAPA 16.03.10.705.01.

In 2009, the Idaho Department of Health and Welfare (IDHW) proposed modifications to the rate structure and rates paid to the Affiliates Plaintiffs through Medicaid. *Id.* Plaintiffs filed suit against Richard Armstrong as Director of IDHW, and Leslie Clement, as Administrator of the Medicaid Division of IDHW. *Id.* ¶ 3. Plaintiffs sought a temporary restraining order, asserting that the proposed changes were preempted by federal law and prohibited by Idaho law. *Id.* ¶ 1.

The Honorable Justin L. Quackenbush, sitting by designation for the District of Idaho, issued an order on April 30, 2009, granting the Temporary Restraining Order (Dkt.

---

[1] References to pleadings in this sub-section of the Background section will refer to the Affiliates v. Armstrong case, No. 1:09-cv-00149, unless otherwise indicated.

17). In his decision, Judge Quackenbush noted that nothing in the record before the court indicated that the reduction in rates was "premised on any concern other than budgetary ones, in direct contravention of *Orthopaedic Hospital v. Belsh*, 103 F.3d 1491, 1496 (9th Cir. 1997)." *TRO*, Dkt. 17 at 3. Also, "[t]here is no evidence that the Department, through reasonable cost study and analysis, concluded that the new rates can provide the quality of medical care and access required by *Independent Living Center v. Shewry*, 543 F.3d 1050, 1065-66 (9th Cir. 2008)." *Id.* at 3-4. Finally, the Court found "[t]here is no evidence that Idaho has fulfilled its statutory obligations under 42 C.F.R. § 430.12 to submit the substantive amendments of its state plan to the federal [Center for Medicare and Medicaid Services (CMS)] for approval," citing *Washington State Health Facilities Ass'n v. Washington Dep't of Soc. and Health Serv.*, 698 F.2d 964 (9th Cir. 1982). *Id.* at 4. The Court concluded that Plaintiffs were likely to succeed on the merits of their claim. *Id.*

The parties entered stipulated preliminary injunctions on May 27, 2009 and June 25, 2009 (Dkts. 27, 28). Defendants then filed a Motion for Permanent Injunction and Judgment (Dkt. 30). Plaintiffs stipulated to entry of a permanent injunction, but asserted that final judgment was premature.

On January 22, 2010, the Honorable William F. Downes, sitting by designation for the District of Idaho, issued an order granting in part, and denying in part, Defendants' motion (Dkt. 45). The Court agreed with Defendants that the Eleventh Amendment bars claims potentially resulting in retrospective relief, such as declaratory relief sought by

Plaintiff that the State of Idaho had been in violation of federal law regarding the setting of [Residential Habilitation Agency] rates since 1995. *Id.* at 8 (citing *Edelman v. Jordan*, 415 U.S. 651 (1974) and *Green v. Mansour*, 474 U.S. 64 (1985)). Agreeing with Plaintiffs, the Court found Defendants' exhaustion argument inapplicable to this case. *Id.* at 10-11. The Court therefore permitted Plaintiffs to amend their Complaint, and found that entry of final judgment was inappropriate. *Id.* at 11.

In 2010 and 2011, the Idaho Legislature directed the IDHW's Division of Medicaid to implement selective contracts in order to "provide the appropriate incentives" and improve the system of payment for health care delivery, "with the objective of moving toward an accountable health care system that results in improved health outcomes." 2011 Idaho Sess. Laws ch. 160 § 12 (codified at Idaho Code § 56-261(1)). In response, on February 25, 2011, IDHW sought proposals for a single contractor to provide all program coordination services in Certified Family Homes. *Dunagan Dec.*, Dkt. 61-2, ¶ 7. The IDHW accepted questions from, and provided responses to, potential bidders. Ex. 1 to *Dunagan Dec.*, Dkt. 61-3.

Describing its proposal as "selectively contracting," the IDHW indicated that it need not seek CMS approval before awarding the single contract, but that it would "comply with CMS requirements for amending its waiver." *Id.* at 1. Where a state, for cost-effectiveness, seeks "to restrict the provider from (or through) whom an [eligible] individual . . . can obtain services," the state must first obtain a waiver (through CMS) from the federal Secretary of Health and Human Services. 42 U.S.C. § 1396n(b)(4).

Also, according to the CMS Manual, a state may arrange for a contracted entity to perform "waiver operational and administrative functions," such as quality improvement, that are "necessary for the proper and efficient administration of the waiver." *CMS Manual* at 60-61, Ex. B to *Grooms Dec.*, Dkt. 65-1. Thus, under the Medicaid Act's waiver provision, and technical guidance from CMS, the IDHW now seeks approval of an amendment to its DD waiver to permit its proposed selective contract.

The IDHW confirmed that its proposed contract would only require one "face-to-face contact per year" between the program coordinator and the Medicaid participant. *Id.* at 2-3. When asked if rule changes would reflect the "reduced expectations of the [IDHW] as outlined in [the] proposal," the IDHW responded that it would "proceed with the rulemaking process to amend its rules as necessary." *Id.* at 1.

On June 3, 2011, the IDHW contracted with Community Partnerships of Idaho for that company to be the sole provider of program coordination in Certified Family Homes. Ex. 2 to *Dunagan Dec.*, Dkt. 61-4. Under the contract, Community Partnerships of Idaho agreed to provide residential habilitation services, at annual fixed rates of $1,070 for new entrants to that program, and $628 per year for existing users of the program. *Id.* As noted in Judge Quackenbush's Order granting Temporary Restraining Order, the existing annualized rate for reimbursing residential habilitation affiliation services, as provided by Plaintiffs in this suit, is $2,905. *TRO*, Dkt. 17 at 3.

On June 10, 2011, the IDHW informed the Plaintiffs that its contract with Community Partnerships of Idaho would take effect August 5, 2011. *Dunagan Dec.*, Ex. 3, Dkt. 61-5.

**3.     Knapp, et al. v. Armstrong, et al., Case No. 1:11-cv-00307**

Plaintiffs in Knapp v. Armstrong are the legal guardians of Jason Knapp and Toby Schultz. *Complaint*, (Case No. 1:11-cv-00307)[2] Dkt. 1, ¶ 2. Jason and Toby are both residents of Certified Family Homes. *Id.* Plaintiffs in the Knapp v. Armstrong case assert that they will suffer harm if IDHW's selective contract with Community Partnerships of Idaho is permitted to take effect. According to Plaintiffs, the selective contract will violate their rights, and the rights of the Certified Family Home providers, to exercise freedom of choice under 42 U.S.C. 1396a(a)(23).

Plaintiffs also assert that implementation of the contract will violate their rights to maintain adequate access to, and quality of, services provided under the Medicaid Act. *Complaint*, Dkt. 1, ¶¶ 25-26. Plaintiffs contend that the contract is preempted by the Supremacy Clause of the United States Constitution, therefore they are entitled to injunctive and prospective relief. *Id.* ¶ 31.

## LEGAL STANDARD

The United States Supreme Court reiterated the standard for a preliminary injunction in *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008). A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to

---

[2]In this sub-section of the Background section, docket numbers refer to pleadings in the Knapp v. Armstrong case, No. 1:11-cv-00307, unless otherwise indicated.

succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Id.* at 376. The standard for issuing a preliminary injunction is identical to that for issuing a temporary restraining order. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F.Supp. 1320, 1323 (N.D. Cal. 1995).

The Court considers these factors using a "sliding scale" approach; a poor showing of one element may be overcome by a strong showing of another, and still support the appropriateness of a preliminary injunction. *Vanguard Outdoor, LLC v. City of Los Angeles*, 2011 WL 2175891 at *3 (9th Cir. June 3, 2011) (finding that the United States Supreme Court in *Winter* "did not completely erase the Ninth Circuit's 'sliding scale' approach").

## ANALYSIS

1.  **Likelihood of Success on the Merits**

The likely success of Plaintiffs' actions concerns four issues: (1) whether the IDHW may seek retroactive effect; (2) whether the IDHW's proposed contract is a rate-cut requiring a state plan amendment; (3) whether the Court has jurisdiction to consider the propriety of the proposed contract and waiver; and (4) whether Plaintiffs have standing to bring an action for violation of the Medicaid Act's free choice clause.

  A. **The IDHW must obtain CMS approval before implementing its selective contract**

The Affiliates Plaintiffs contend that the IDHW's contract with Community Partnerships of Idaho required approval of an amendment, which was not sought or received prior to Plaintiffs' filing of this action. Although the IDHW has since submitted a proposed amendment to CMS – on or around July 22, 2011 – approval would need to be applied retroactively, unless granted before August 5, 2011. The Court will assume for now a decision from CMS will not issue before August 5.

Approval by CMS of state plan amendments must be obtained prior to implementation of the proposed amendments. *Washington State Health Facilties Ass'n v. Washington Dep't of Soc. and Health Serv.*, 698 F.2d 964 (9th Cir. 1982) (affirming district court's grant of preliminary injunction that prevented changes in Medicaid reimbursement without prior federal approval; *Exeter Memorial Hosp. Ass'n v. Belshe*, 145 F.3d 1106 (9th Cir. 1998); *Oregon Ass'n of Homes for the Aging, Inc. v. State of Oregon,* 5 F.3d 1239 (9th Cir. 1993); *Cal. Hosp. Assn. v. Obledo,* 602 F.2d 1357, 1361 (9th Cir. 1979). As IDHW notes, and Plaintiffs concede, Ninth Circuit cases addressing the timing of requests for CMS approval have addressed only state plan amendments, not waiver amendments.

The IDHW argues that approval is not needed prior to implementing its selective contract, citing the CMS Manual which provides:

> A state may propose that an amendment take effect prospectively on some future date. An amendment also *may be made retroactive* to the first day of a waiver year (or another date after the first day of the waiver year) in which the amendment is submitted unless the amendment would result in a reduction of the number of persons served, services provided or providers.

**MEMORANDUM DECISION AND ORDER - 10**

*CMS Manual* at 30-31 (emphasis added), Ex. B to *Grooms Dec.*, Dkt. 65-1. Also, the IDHW suggests that, based on its on-going communications and past experiences with CMS, it is aware that CMS prefers that most aspects of proposals for waiver amendments be in place upon submission of its request.

Interestingly, if the Court permits the IDHW to implement its selective contract and CMS ultimately rejects the waiver amendment, then one of two results will occur: (1) the IDHW will have implemented a waiver plan that is in violation of Medicaid and must be undone at significant cost to providers, including the Affiliates Plaintiffs and Community Partnerships of Idaho; or (2) the IDHW will have implemented a waiver plan for which it will receive no federal participation, and must be funded solely by state general funds. It is ironic, if not plainly illogical, that the provision allowing for waiver – § 1396n(b), is intended for "cost-effectiveness," while the process for seeking and receiving the waiver results in such waste of resources. In any event, the Court finds that the language in the CMS manual adequately dictates the propriety of retroactive application here, without need to resolve this apparent conflict.

The provision for retroactivity in the CMS Manual includes an exception – where "the amendment would *result in a reduction of the . . . services provided*." *CMS Manual* (emphasis added). The IDHW seems to concede that "affiliation" is indeed a service. Plaintiffs assert that, by contracting with a single provider throughout the state for this service, the IDHW reduces costs by roughly half, but also necessarily reduces the

**MEMORANDUM DECISION AND ORDER - 11**

*services* provided. The Court agrees. In reducing the "services provided" to Medicaid participants, the proposed waiver is thus excluded from those which may be made retroactive under the CMS Manual. *CMS Manual*, at 30-31.

For this reason, the Court concludes that, in the absence of a decision by CMS to to approve the IDHW's waiver amendment, the Plaintiffs in both cases are very likely to succeed on the merits of their case.

> **B. The IDHW's proposed contract would have the effect of a reimbursement rate cut, but can be implemented with approval from CMS of, and compliance with Medicaid Act requirements for, a waiver amendment, rather than a state plan amendment**

Before amending a reimbursement rate in a state's Medicaid plan, a state must consider the quality of, and access to, services and care, that justify the amendment. *Indep. Living Center v. Maxwell-Jolly*, 572 F.3d 644 (9th Cir. 2009). The Plaintiffs in Affiliates assert that IDHW's proposed contract with Community Partnerships of Idaho is effectively an amendment to the Plaintiffs' reimbursement rates – specifically a 100% cut, which is preempted by federal law, because requisite procedures under the Medicaid Act were ignored. Under this view, IDHW's contract with Community Partnerships of Idaho is an amendment to Idaho's state plan without prior CMS approval. 42 U.S.C. § 1396c.

The IDHW counters that it is not cutting Plaintiffs rates, so as to require a state plan amendment. Rather, it is converting the "affiliation" service to a contracted administration and operation function. The IDHW notes that Idaho's state plan under

Medicaid does not mention "affiliation service." *Grooms Dec.*, ¶ 9, Dkt. 65-1. Instead, affiliation service is addressed only in Idaho's DD waiver. *Id.* The IDHW proposes to convert affiliation services to an administrative function through a single contract with Community Partnerships of Idaho to perform all affiliation services throughout the state. According to the IDHW, this selective contract need only be approved through an amendment to the DD waiver, not Idaho's state plan; thus, its actions are permitted under federal and state laws, as well as under CMS's technical manual.

The Court agrees with the IDHW that "affiliation" is a construction of Idaho's DD waiver, and not its state plan. However, it is also true that the proposed contract, and thus the proposed DD waiver amendment, has the effect of cutting reimbursement rates to providers such as the Affiliates Plaintiffs. While the IDHW has sought approval of its contract through the appropriate channel -- a waiver amendment – it timing is questionable.

The Court also has concerns with the proposed contract and the waiver amendment's compliance with requirements in §1396n(b)(4). Specifically, it is unclear whether the proposed contract ensures that the single provider, Community Partnerships of Idaho, will provide services so as to

> . . . comply with the reimbursement, quality, and utilization standards under the State plan, which standards shall be consistent with the requirements of §1396r-4 of [the Act] and are consistent with access, quality, and efficient and economic provision of covered care and services.

42 U.S.C. § 1396n(b)(4). Although states are given flexibility in designing their Medicaid programs, they must still fulfill the Medicaid Act's requirements. *See Lewis v. Hegstrom*, 767 F.2d 1371 (9th Cir. 1985).

The IDHW argues that if the waiver is inappropriate – for whatever reason – the decision to deny it is solely within the purview of CMS, and not the courts. The question is thus whether the Court has jurisdiction to address the appropriateness of the waiver amendment.

### C. Jurisdiction of the Court

The IDHW asserts that this Court lacks jurisdiction to address the validity of its selective contract and amendment waiver, as such issues are properly for CMS to determine. Under the doctrine of primary jurisdiction, the courts have discretion to determine whether, concerning issues such as those present here, "the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "[P]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression . . .." *Id.* (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). In deciding whether to invoke the doctrine, the courts also consider

> . . . (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.

*Id.* (citing *General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). In addition, the courts look to the potential for conflicts due to overlapping jurisdictions. *Id.* (quoting Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.1 at 917 (4th ed. 2002)).

The Court finds that, while not unduly complex, uniformity in administration is critical, and Congress has delegated the authority to regulate administration of and compliance with the Medicaid Act with the Secretary of Health & Human Services, who in turn, delegated such authority to CMS. 42 U.S.C. § 1396 et seq.; 42 C.F.R. § 430.15(b). Although the Plaintiffs in Knapp assert otherwise, the Court also finds that the issues presented are of first impression. In making this finding, the Court again distinguishes the Ninth Circuit cases cited by Plaintiffs. *See e.g. Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651-53 (9th Cir.2009) (court considered whether state agency violated §30(A) of Medicaid Act); *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1496 (9th Cir.1997) (court considered plaintiff's §1983 claim for violation of §30(A)); *Cal. Pharm. Ass'n. v. Maxwell-Jolly*, 596 F.3d 1098, 1115 (9th Cir. 2010) (court considered whether state agency violated §30(A)). In those cases, the courts considered whether state plan amendments complied with § 1396a(a)(30)(A) of the Act.

Plaintiffs contend that the same issue is presented here, and having been thoroughly addressed by the Ninth Circuit, need not be left to the relevant agency to resolve. However, as this Court has discussed herein, the issue is whether the IDHW's waiver amendment complies with § 1396n(b)(4), not whether a state plan amendment is

needed or has complied with subsection 30(A). The Court therefore concludes that this issue is appropriately left to CMS, under the primary jurisdiction doctrine.

Regarding the possible prospective implementation of the IDHW's waiver amendment, the Court finds that Plaintiffs are not likely to success on the merits.

**D.     Standing to bring action challenging violation of free choice provision**

Plaintiffs in the Knapp case assert that IDHW is in violation of the free choice provision under § 1396a(a)(23). As stated above, under § 1396a(a)(23), a Medicaid participant may obtain services under the Act "from any institution, agency, community pharmacy, or person, qualified to perform the service." 42 U.S.C. §1396a(a)(23). According to the Knapp Plaintiffs, the IDHW's contract with Community Partnerships of Idaho is preempted by federal law because it restricts who Medicaid participants may choose as their providers, without seeking a waiver from CMS. The Knapp Plaintiffs argue that they have standing under the Supremacy Clause of the United States Constitution because they will be directly injured by the elimination of free choice, if the IDHW's selective contract with Community Partnerships of Idaho is implemented.

To have standing under Article III, a plaintiff must show: (1) injury in fact, or invasion of a legally protected interest that is (a) concrete and particularized; and (b) actual or imminent, as opposed to conjectural or hypothetical; and (2) a causal connection between the defendant's challenged action and the plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Ninth Circuit has held that Medicaid beneficiaries facing a reduction in "quality services, and access to quality services" due to

a 10% cut in provider payments were injured so as to satisfy standing requirements. *Independent Living Ctr. of So. Cal. v. Shewry*, 543 F.3d 1050, 1065 (9th Cir. 2008).

The Court finds the circumstances for the Knapp Plaintiffs similar to those in *Shewry*, and thus agrees that they have standing. The Affiliates Plaintiffs have not asserted, nor does the Court find, that they have standing under this provision. With respect to this issue, the Court finds that the Knapp Plaintiffs, only, have a strong likelihood of success on the merits.

**2.     Irreparable Harm**

A "possibility" of irreparable harm is insufficient basis for a preliminary injunction; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 129 S.Ct. at 374.

The Knapp Plaintiffs argue that they will suffer irreparable harm by virtue of IDHW's interference with their right to free choice of provider under the Medicaid Act, specifically § 1396n. Citing *Cal. Pharmacists Assn. v. Maxwell-Jolly*, 596 F.3d 1038 (9th Cir. 2010). Also, Plaintiffs in Knapp assert that they will be harmed if IDHW's selective contract is permitted to take effect because the Eleventh Amendment bars them from recovering damages; thus, the only available remedy is the injunctive relief now sought. Citing *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009). Finally, the Knapp Plaintiffs note that, if the selective contract is implemented, they will be forced to terminate their current relationships with affiliation service providers, and begin new ones with Community Partnerships of Idaho since the Plaintiffs in Affiliates

would be forced to stop providing affiliation services upon implementation of the IDHW's selective contract.

The IDHW has stated that, in the event that CMS does not approve of its proposed waiver amendment, the IDHW would simply forego federal participation for affiliation services, and proceed with its selective contract, paid out of state general funds. It does not appear there is any likelihood that Plaintiffs' relationships with each other, as provider and receiver of services, would be repaired. The Court thus finds that the impact and injury on Plaintiffs in both cases is likely and irreparable. This factor also weighs in favor of granting the preliminary injunction.

### 3. Balance of Equities and Public Interest

In considering whether a preliminary injunction or temporary restraining order should issue, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376. On balance, the Court finds that the public interest in the IDHW's adherence to federal statutory requirements outweighs harm to the IDHW. As this Court has previously noted, a reduction in rates cannot be premised on budgetary considerations alone. *Order Granting TRO*, Dkt. 17 at 4 (citing *Orthopaedic Hosp. v. Belsh*, 103 F.3d 1491, 1496 (9th Cir. 1997)). On the facts now before it, the Court also finds that implementation of a selective contract cannot be premised solely on budgetary considerations, but must consider the impact on participants.

The IDHW has acknowledged that its selective contract was proposed in response to the Idaho Legislature's expression of budgetary concerns. The IDHW cites the public interest in non-interference with its federal-state partnership under the Medicaid Act. However, the Court is unconvinced that this interest outweighs the harms suffered by the Knapp Plaintiffs, and also – although to a lesser extent – by the Affiliates Plaintiffs, if the selective contract were implemented without CMS approval. This factor also weighs in favor of granting the preliminary injunction.

## CONCLUSION

In light of the foregoing analysis, the Court finds that a preliminary injunction is appropriate, pending a decision by CMS on the IDHW's waiver amendment, and will grant it. The IDHW is enjoined from implementing its proposed contract with Community Partnerships of Idaho until it has received approval from CMS. If and when such approval is granted, the Court will defer to findings and conclusions by CMS that the contract complies with the Medicaid Act. In the event that CMS renders its decision without analysis of the applicable provisions of the Medicaid Act, the Court may consider a renewed motion by Plaintiffs.

## ORDER

**IT IS ORDERED THAT:**

1. The Affiliates Plaintiffs' Motion for Preliminary Injunction (Dkt. 61 in Case No. 1:09-cv-00149) is GRANTED pending a decision from CMS regarding the IDHW's proposed waiver amendment.

2. The Knapp Plaintiffs' Motion for Preliminary Injunction (Dkt. 2 in Case No. 1:11-cv-00307) is GRANTED pending a decision from CMS regarding the IDHW's proposed waiver amendment.

DATED: August 4, 2011

_____
B. Lynn Winmill
Chief Judge
United States District Court